## VANN v. BANKERS LIFE CO.
### No. 4511.

Circuit Court of Appeals, Fourth Circuit.

Nov. 6, 1939.

Norman Block, of Greensboro, N. C. (L. P. McLendon, T. H. Brooks, and Brooks, McLendon & Holderness, all of Greensboro, N. C., on the brief), for appellant.

J. L. Emanuel, of Raleigh, N. C. (James H. Pou, Jr., of Raleigh, N. C., Dwight Brooke, of Des Moines, Iowa, and Pou & Emanuel, of Raleigh, N. C., on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

SOPER, Circuit Judge.

This suit was instituted by Edward B. Vann, plaintiff below, to secure the reinstatement of two life insurance policies issued to him by the Bankers Life Company, and also to recover certain disability payments alleged to be due under one of them. The insured had previously agreed to a cancellation of the policies upon a payment to him of the sum of $1,250; but he alleged in his complaint that the agreement had been procured from him by false and fraudulent representations to the effect that the policies had no value, and that these

representations were made at a time when he was sick and disabled so that he could not determine for himself that the representations were false and fraudulent. The case was tried before a jury and upon the conclusion of the evidence on both sides, the District Court withdrew the case from the jury and ordered that the action be dismissed as of non-suit.

■■ Upon this appeal the plaintiff contends amongst other things that the judgment is void because the transcript of record does not show that the defendant moved for a judgment of non-suit at the conclusion of its case, but moved for a directed verdict, and that no formal verdict was rendered, the case being dismissed by the judgment of non-suit. We do not find it necessary to consider this technical point or to discuss the bearing thereon of the New Rules of Civil Procedure, 28 U.S. C.A. following section 723c; for it is manifest that the case should have been placed upon the equity docket and tried by the judge without a jury since the basic relief of reinstatement sought in the complaint was unquestionably a matter cognizable in equity and not in law. We shall therefore adopt the course approved in Great American Ins. Co. v. Johnson, 4 Cir., 25 F.2d 847 and Id., 4 Cir., 27 F.2d 71, and examine the evidence as upon an appeal in equity in order to determine whether the District Judge was correct in his conclusion that the plaintiff had failed to make out a case. This procedure is particularly appropriate in this case because our examination of the record convinces us that there was no substantial evidence of fraud on the part of the defendant.

Two policies were issued to Vann by the company, one on September 19, 1930 for $10,000, and the other on October 31, 1930 for $5,000, each containing a clause in which the company agreed to waive further payment of premium in case of total disability of the insured from bodily injury or disease. The second policy also contained an agreement on the part of the company in case of such total disability to make certain monthly payments to the insured, beginning at the end of the fourth completed month of disability.

On December 23, 1930 the insured was injured by a fall and suffered a total disability. On April 23, 1931 he filed a claim for disability benefits. On July 14 the Company denied liability on the ground of omission and nondisclosure of facts by the insured in answer to questions contained in the applications for the policies, and also on the ground that the disability was due to a cause which originated before the issuance of the contract.

On March 9, 1927 Vann had suffered an injury to his arm and back by cranking a car, had been given treatment by a doctor, and had received payments on account of the injury under an insurance policy. In the fall of 1927 he was treated by the same physician for spondylitis and myositis, that is, inflammation of the joints and spine and muscles of the back. The same physician attended the insured for the injuries received in the accident of December 23, 1930. In his applications for the policies in suit, the insured said that he was in good health and that he had not had any sickness in the preceding five years, mentioning, however, that the Pacific Mutual Life Insurance Company had paid him $116 for injury to his arm and back caused by cranking a car in 1928, from which injury he had completely recovered. The defendant Insurance Company in the pending case made an investigation after the presentation of the claim of the insured on April 23, 1931 and learned of the illness from which the insured had suffered in the fall of 1927. Information on this point was contained in a certificate accompanying the claim for disability benefits executed by the doctor who had attended the insured in 1927 and also at the time of his last injury, and reference to the sickness of the insured in the fall of 1927 was also contained in a letter from the same physician. The Insurance Company had also learned by a comparison of the statements in the applications for the two policies with the statements contained in the claim for disability payments that the insured had understated in his application the amount of the other insurance which he then carried. As the result of the information secured in this investigation, the company rejected the claim of the insured for disability payment.

Following the rejection of the claim, towit, on July 21, 1931 Vann went from his home in Kinston to Raleigh, North Carolina, to call upon the chief deputy of the Insurance Department of North Carolina, to whom he complained of the company's action. The deputy wrote to the company with regard to the case and in response thereto James E. Goodwin, an attorney of long experience, called upon the deputy

at the request of the company to explain the case. The next day, to-wit, August 7, 1931, the attorney went to Kinston and called upon Vann. At that time the plaintiff was in bed in a weak condition and had taken a drug on that morning and on the night before to ease his pain caused by his injury. His wife helped him to get dressed and come down stairs to interview the attorney. The latter knew that Vann was not well, but it appeared to him that Vann was able to attend to business.

In substance, the testimony of Mr. and Mrs. Vann as to what occurred at the conference between the parties is as follows: Vann's condition was "not very good" at the time. The drug had affected his will power and self control, so that they were at a very low ebb, and he was not able to use a "reasonable amount of judgment about anything" or to attend to business. While in this condition, he received Goodwin and Goodwin said that he had been sent down by the company to enter suit to cancel the policies; that the policies were worthless; that he was a brother Master Mason and a lawyer, and as such, advised the insured that he did not need a lawyer and that it was to his interest to accept the sum of $1,000 and agree to cancel the policies. Subsequently the offer was raised to $1,250. The attorney wrote out an agreement of cancellation in long hand at the desk of the insured and the insured, being weak and helpless, and believing the statement of the attorney to be true, accepted the attorney's check for $1,250 and signed the paper and surrendered the policies. Mrs. Vann, who was the beneficiary in the policies, also signed the agreement of cancellation. The agreement recited the issuance of the policies, the company's charge that Vann did not give a correct condition of his health in the application for the policies, the denial of this charge by Vann and the desire of both parties to compromise the controversy; and in consideration of the sum of $1,250 the company was released from all liability under the policies, and they were surrendered and cancelled. Nothing was said at the interview about the letter from the doctor.

The testimony of the company's attorney, on the other hand, was substantially as follows: Vann came into the room slowly, but he seemed to be absolutely normal; he participated in the discussion which lasted an hour and a half, and seemed to understand the case. The attorney had with him the applications for the policies, the medical examination, the claim papers and the doctor's letter showing the illness of the insured in the fall of 1927, all of which were explained to the insured. The attorney also explained to the insured that because of the information as to his sickness in the fall of 1927, the policy would not cover the accident of 1930, but that the company was nevertheless willing to make some sort of amicable settlement. The attorney offered Vann $1,000 but he refused that sum and offered to take $1,250 to which the attorney assented, and the agreement was accordingly prepared and signed. Nothing was said at the interview about the need of the insured for a lawyer. Some reference was made to the fact that the attorney was a Mason, since he was wearing a Masonic emblem; but no reference was made to the membership of the insured in the order.

There is nothing in the testimony of the insured to indicate that he was the victim of fraudulent representations on the part of the attorney for the company, and even if it be thought that the testimony as to his physical and mental condition at the time of the settlement, taken by itself, tends somewhat to show that he signed the agreement under undue pressure so that it was not his free and voluntary act, his subsequent actions nullify such an inference.

On the day after the settlement, Vann and his wife endorsed the check and he prepared a deposit slip and sent it by mail with the check for deposit to his credit in a new account in a bank in Raleigh.

In September he went to see an attorney and consulted him about the case. In November he put the papers in the case in his attorney's hands. No suit was brought until June 7, 1933, and this suit was dismissed by a voluntary non-suit on May 16, 1938.

In the months of October, November and December, 1931, an interchange of letters between Vann and the Company took place in regard to a note of $110.60 which Vann had given to the Company on December 9, 1930 in part payment of a premium. On October 28, 1931 Vann wrote to inquire if the Company held the note and said that he would like to get these matters all cleared up. Although he had consulted an attorney in the meantime, no com-

plaint was made as to the August agreement of cancellation. The Company replied on November 7 that they had possession of the note and were holding it as part of the record in the case since the policy had been cancelled by the agreement; but that there was no liability on Vann's part in connection with the note. On November 25 Vann again wrote at length ·to' the Company under the caption "re cancelled policies" and stated that the Company was evidently under the impression that he had not paid for the policies for otherwise they would have forwarded him a check for the pro rata part of the unearned premium. He claimed that he was entitled to this because he had paid his premiums in full for something he had not got. He said that he had paid the note to an agent of the Company. He made no complaint as to the August settlement. In response to this letter the Company denied that he had paid the note, stating that it was still in their possession and that as he had received the sum of $1,250 and had executed a compromise agreement for cancellation of the policies, he was not entitled to any further payment.· In response to this letter Vann wrote to the Company in December saying that he had made a mistake and that the money which he had paid to the agent was to make good the check given in part payment of the premium and was not in payment of the note. Later at the trial he testified that he had written this letter at the request of the agent in order to protect him from a dismissal. At the time of the trial the agent was dead.

From this recital of the facts it appears that during the latter part of 1931, when it is admitted that Vann was in full possession of his faculties and had had legal advice, he made no claim that he had signed the agreement of cancellation improvidently or under pressure, but on the contrary reaffirmed the cancellation by asking for a return of the unearned premium. Taking these circumstances into consideration in connection with the undisputed fact' that he did not make a full disclosure of the facts in his answers to the questions in the applications, we conclude that he has no valid cause to complain of the treatment which he obtained from the Insurance Company.

The judgment of the District Court is affirmed. '